IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BROOKE E. HOLFORD,<br>   *Plaintiff,*<br> v.<br><br>LORI A DIFABIO, *et al.*,<br>   *Defendants* | CIVIL ACTION<br>NO. 21-02261 |

**PAPPERT, J.**                            December 6, 2021

### MEMORANDUM

Brooke Holford alleges her father Keith Holford[1] signed a lease using her name as his co-signer "without her knowledge, consent or authorization." (Compl., ECF 1, ¶ 63.) After state court judgments for unpaid rent were entered against her and her father, she brought this action alleging the lease "she did not execute" was "used to create false and fraudulent judgments in order to extort payment from" her. (*Id.* ¶ 64.)

Holford alleges claims of fraud, libel, slander, negligence, "concert of action" and intentional infliction of emotional distress against Matthew Russo, the listing agent for the rental property; his real estate agency, Fox & Roach LP t/a Berkshire Hathaway HomeServices Fox & Roach Realtors; property owner Daniel C. Diaz, property manager Lori DiFabio[2]; and Jessica Kubisiak, an attorney involved in the state court proceedings. Kubisiak, Fox & Roach and Russo and Diaz have filed motions to dismiss

---

[1] Keith Holford was never a party to Brooke Holford's lawsuit and, in any event, on October 19, 2021, her counsel informed the Court that Mr. Holford died. (*See* Oct. 19, 2021 letter, ECF 34-2.)

[2] DiFabio filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, and the action against her is stayed consistent with 11 U.S.C. § 362. (*See* ECF 13.)

which the Court now grants.

I

Holford alleges Keith Holford[3] leased Diaz's property at 1025 10th Avenue, Folsom, Pennsylvania sometime in June 2019. (Compl., ECF 1, ¶¶ 18-19.) Fox & Roach, "by itself and through its agent" Russo had marketed the property for rent. (*Id.* ¶ 53; see also *id.* ¶¶ 21, 57.) At some point before the lease was finalized, Fox & Roach informed Keith Holford he needed a co-signor to rent the property "because he had a poor credit rating at the time." (*Id.* ¶¶ 23, 59.) He told Fox & Roach that Holford would co-sign the lease. (*Id.* ¶ 24.) A rental application for the property included Holford's cellphone number and an incorrect email address. (*Id.* ¶¶ 109-111.) Holford alleges she "was unaware that she was supposed to 'co-sign' any lease at all." (*Id.* ¶ 33.) She "was already leasing an apartment in West Virginia" at the time and was "barely surviving on part-time employment as a full-time college student." (*Id.* ¶ 112.)

Holford alleges "there is not one document signed by [her] nor is there a single occasion where [she] 'acknowledged her liability for rent.'" (*Id.* ¶ 74.) Instead, she asserts lease documents were prepared on June 11, 2019 using "ZipForm" and were transferred to the "DocuSign" program for transmission to Keith Holford alone. (*Id.* ¶¶ 25, 27.) DocuSign "is used to verify the authenticity of electronic signatures . . . ." (*Id.* ¶ 28.) Fox & Roach used DocuSign to send the lease to Keith Holford's email address, but not to Holford's. *(Id.* ¶ 33.) On June 14, 2019, Keith Holford electronically signed and initialed lease documents for himself and also electronically signed the documents "using [Holford's] name and initials" before emailing them to Fox & Roach

---

[3]   The Court refers to Brooke Holford as Holford and Keith Holford by his full name.

using his own email address. (*Id.* ¶ 34.) Keith Holford's electronic signature appears in the box on the lease for Holford's signature and Holford's appears in the box for her father's. (*Id.* ¶ 35.) Holford asserts "[p]rofessionals such as FoxRoach, Russo, DiFabio, Kubisiak, and [ ] Diaz [ ] "knew or should have known that there has never been any execution of any lease by [Holford] through DocuSign, and that obviously K[eith] Holford executed the Lease using [her] name and initials] . . . ." (*Id.* ¶ 79.) She alleges they "knew or should have known [she] could not possibly have executed the Lease Documents since she did not receive the Lease Documents at her own discrete email address or return the documents from her own discrete email address." (*Id.* ¶ 47.)

The lease began on July 1, 2019 and sometime around then Keith Holford "paid the whole years' worth of rent, including the security deposit, and even the extra rent required for his two dogs . . . ." (*Id.* ¶ 38.) On July 5, 2019, he issued six checks in the amount of $26,200 to DiFabio and a single $2,100 check to Fox & Roach. (*Id.* ¶¶ 38-39.) When the lease expired on June 30, 2020, Holford's father refused to vacate the property. (*Id.* ¶ 40.) On or about September 15, 2020, DiFabio as plaintiff, through Kubisiak, filed a Landlord/Tenant complaint with the local Magisterial District Court against Keith Holford and Holford. (*Id.* ¶¶ 41, 66, 68.) DiFabio is alleged to have done so "without the requisite written authorization from" Diaz. (*Id.* ¶ 66.) Holford asserts she received no notice of the suit because she lived and worked in West Virginia. (*Id.* ¶ 42.) A default judgment for $9,069.71 plus interest and court costs was entered in favor of DiFabio and against Keith Holford and Holford on October 2, 2020. (*Id.* ¶ 43.) Holford alleges she received no notice of the default judgment. (*Id.*) DiFabio and Kubisiak certified the judgment against the Holfords in the Delaware County Court of

Common Pleas on December 28, 2020. (*Id.* ¶¶ 44, 69, 71-72.) Sometime in February 2021, Holford received notice of the lawsuit and default judgment by USPS mail forwarded to her in West Virginia. (*Id.* ¶ 45.)

Holford alleges Kubisiak and DiFabio created a false affidavit that Fox & Roach and Russo submitted to the Court of Common Pleas "to support the fraudulent judgment procured in Magistrate Court . . . ." (*Id.* ¶ 71.) In the Affidavit, Russo stated that he met with Holford, Keith Holford and Shane Holford, Keith's son in May 2019 "for a walk-though" of the property and that Holford told Russo she "wanted to walk-through the Property to see if she was interested in renting and occupying the Property and becoming a co-tenant on any lease entered into in connection" with the Property. (*Id.* ¶ 71(5)-(6).) Russo also met with Holford and her father on or about June 23, 2019 "for another walk-through, during which time [Holford] took measurements" and they had "direct discussions" regarding the lease. (*Id.* ¶ 71(11)-(12).)

Holford also alleges Russo, DiFabio and Kubisiak "acted in concert" in creating an affidavit DiFabio submitted to the Court of Common Pleas to support the default judgment. In it, DiFabio said she was 1025 10th Avenue's "property manager." (*Id.* ¶ 72(1).) She stated Holford "personally signed the Lease and agreed to become jointly and severally liable for the rental obligations . . . ." (*Id.* ¶ 72(3).) Moreover, during the summer of 2019, she "personally observed that both" Holford and her father (and Shane) "had completely moved into and were occupying the Property." (*Id.* ¶ 72(4).) DiFabio visited the property and saw a bedroom was fully furnished with Holford's personal items and furniture. (*Id.* ¶ 72(6).) DiFabio contacted Holford and her father throughout the term of the lease and after its expiration to discuss certain defaults of

4

the agreement including "failure to pay rent and/or to vacate in accordance with the terms thereof." (*Id.* ¶ 72(11).) DiFabio stated Holford "never claimed that her signature on the Lease was allegedly forged and/or that she was not responsible for the rental obligations" under the lease. (*Id.* ¶ 72(12) (emphasis omitted).) Notwithstanding the assertions in DiFabio's affidavit, Holford alleges "there is not a single direct contact by and between DiFabio and [Holford] by phone, cell phone, text, facsimile or by email." (*Id.* ¶ 75.)

Holford alleges that on January 15, 2021, unbeknownst to her, Diaz filed a second landlord tenant complaint against her and her father "based on the same false representations as DiFabio's September 15, 2020 Landlord/Tenant Complaint." (*Id.* ¶ 87.) Two weeks later, the magisterial district judge entered a default judgment in favor of Diaz and against Holford and her father for $9,194.23. (*Id.* ¶ 90.) Holford claims she was not served with the second landlord tenant complaint and she received no notice of it "until late January or early February 2021." (*Id.* ¶ 89.) On February 5, 2021, Holford retained counsel and appealed the second judgment to the Court of Common Pleas.[4] (*Id.* ¶ 91.)

Holford contends her "reputation, credit rating, and future employment opportunities have been forever damaged due to the judgments against her . . . ." (*Id.* ¶ 94.) She claims Defendants' alleged false statements about her impaired "her reputation and standing in the community," and caused "personal humiliation, and mental anguish and suffering including severe emotional distress." (*Id.* ¶¶ 102-103.)

---

[4]  She alleges the "appeal will be heard in arbitration in November 2021." (Id. ¶ 92.) She has not provided an update to the Court regarding the status of the appeal.

5

She maintains the judgments against her "deter people, creditors and organizations from associating or dealing with [her] generally and as a schoolteacher in particular." (*Id.* ¶ 104.)

## II

### A

To satisfy Federal Rule of Civil Procedure 12(b)(6), Holford's Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the Complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786-87).

III

A

Pennsylvania's judicial privilege (also referred to as "litigation privilege") bars Holford's claims against Kubisiak, Fox & Roach, Russo and Diaz.  The privilege "provides 'immunity for communications which are made in the regular course of judicial proceedings and are material to the relief sought' whether made by a party, witness, an attorney, or a judge." *Church Mut. Ins. Co. v. All. Adjustment Grp.*, 102 F. Supp. 3d 719, 730 (E.D. Pa. 2015) (quoting *Schanne v. Addis*, 121 A.3d 942, 947 (Pa. 2015), aff'd, 708 F. App'x 64 (3d Cir. 2017).  It covers statements made in pleadings. *Post v. Mendel*, 507 A.2d 351, 353 (Pa. 1986).  The privilege exists "because there is a realm of communication essential to the exploration of legal claims that would be hindered were there not the protection afforded by the privilege." *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 311 (3d Cir. 2003) (citations and internal quotations omitted).  It "is absolute, meaning that, where it attaches, the declarant's intent is immaterial even if the statement is false and made with malice." *Schanne*, 121 A.3d at 947.  "It extends to all tort actions based on statements made during judicial proceedings." *Church Mut. Ins. Co.,* 102 F. Supp. 3d at 730 (citing *Panitz v. Behrend*, 632 A.2d 562, 564 (Pa. Super. Ct. 1993)). "[T]he privilege does not apply if the communication was extrajudicial or bears no relation to the proceedings." *Vinco Ventures, Inc. v. Milam Knecht & Warner, LLP*, No. 20- 6577, 2021 WL 4399682, at *16 (E.D. Pa. Sept. 27, 2021) (citations omitted).

Kubisiak maintains the litigation privilege bars Holford's claims against her because they only "concern actions taken within the context of a judicial proceeding":

7

the filing of the September 2020 and January 2021 landlord/tenant complaints, the ensuing default judgments and Kubisiak's certification of the first judgment in the Delaware County Court of Common Pleas. (Kubisiak Mem. of Law, ECF 12 at 11 (citing Compl., ECF 1, ¶¶ 41, 43-44, 46, 87).) Holford argues "Kubisiak's actions are beyond 'judicial privilege'" at this stage of the pleadings. (Pl.'s Resp. to Kubisiak Mot., ECF 27, at 7.) She claims Kubisiak's actions were fraudulent, negligent and/or defamatory because, despite Russo and DiFabio's affidavits stating otherwise, Kubisiak should have known Holford never signed the lease. (*See* Compl., ECF 1, ¶ 46-47, 51, 71-72).) However, none of Kubisiak's alleged actions involve communications either made outside of the regular course of the landlord/tenant actions or not material to the relief sought in state court and, as a result, none fall outside of the privilege's protections.

Judicial privilege also bars Holford's claims against Russo and Fox & Roach because they arise from the allegedly false affidavit they "submitted" to the Magisterial District Court after Kubisiak "created" it with DiFabio. (*See id.*, ¶¶ 71-72.)

Diaz maintains the judicial privilege bars Holford's claims against him because they arise from her allegation that he made "false representations" in the second landlord/tenant complaint. (Diaz Mem. of Law, ECF 32-1 at 6 (citing Compl., ECF 1, ¶ 87).) Holford responds that his position is "nonsense." (Pl.'s Opp'n to Diaz Mot., ECF 33 at 6.) But, as with the other defendants, none of Diaz's alleged actions involve extrajudicial communications or communications that were immaterial to the relief sought in state court.

Even if the judicial privilege did bar Holford's claims, she also fails to plead enough facts to make them facially plausible.

B

Holford's fraud claim (Count 1) arises from Defendants' alleged fraudulent misrepresentations. Her claim against Russo and Fox & Roach derives from her allegations that Russo signed an affidavit describing the execution of the lease for 1025 10th Avenue when he and Fox & Roach[5] "knew or should have known that [Holford] could not possibly have executed the Lease Documents since she did not receive [them] at her own discrete email address or return [them] from her own discrete email address." (Compl., ECF 1, ¶¶ 47, 51). She similarly alleges Kubisiak "knew, or should have known, and w[as] reckless in not knowing" Holford did not sign the lease documents that were relied on to "create false and fraudulent lawsuits." (*Id.* ¶¶ 63-64, 79.) Holford claims Kubisiak falsely certified the October 2020 default judgment and "created" a "false affidavit" which contained "little or no truth . . . ." (*Id.* ¶ 69-73.) Her fraudulent misrepresentation claim against Diaz is based on her allegation that he filed the second landlord/tenant complaint against her "based on the same false representations as DiFabio's September 15, 2020 Landlord/Tenant Complaint." (*Id.* ¶ 87.) However, her allegations that the statements made and relied on in the landlord/tenant actions were fraudulent misrepresentations that purportedly caused default judgments to be entered against her (*see, e.g., id.*, ¶¶ 65, 70-72, 76, 80, 87) do

---

[5] In Count 8, Holford asserts a claim for "Respondeat Superior/Vicarious Liability," alleging Fox & Roach "is vicariously liable for' Russo's conduct to the extent that he "acted within the scope of his employment as an agent of Fox & Roach. (Compl., ECF 1, ¶ 141.) She also claims Diaz is vicariously liable for DiFabio's conduct (*id.* ¶ 142) and DiFabio and Diaz are vicariously liable for Kubisiak's conduct. (*Id.* ¶ 143.) *Respondeat superior* "is merely a legal theory by which liability might be imposed, . . . not a claim in its own right" and "[c]ourts in the Circuit have therefore repeatedly rejected attempts to allege stand-alone *respondeat superior* claims." *Scripnicencu v. LSF9 Master Participation Tr.*, No. 19-5280, 2020 WL 4805349, at *11 (E.D. Pa. Aug. 18, 2020) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010) (further citations omitted). Count 8 is accordingly dismissed in its entirety.

not support a fraudulent misrepresentation claim against any Defendant.

To state a fraudulent misrepresentation claim under Pennsylvania law, Holford must allege facts to show: (1) a representation; (2) material to the relevant transaction; (3) made with knowledge of its falsity or recklessness as to whether it is true or false; (4) with an intent to mislead another into relying on it; (5) justifiable reliance; and (6) the reliance proximately caused an injury to the party who justifiably relied upon the misrepresentation.[6] *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646 (Pa. 2021) (citing *Bortz v. Noon*, 729 A.2d 555, 560 (1999). With respect to the last element, Holford must show the "defendant's acts or omissions were a substantial factor in bringing about [her] harm." *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771 (3d Cir. 2009) (citation omitted).

Holford fails to state a claim because she is not the person Defendants could have intended to mislead or who justifiably relied on the alleged fraudulent misrepresentations. Rather, it is the courts in the landlord/tenant actions who were allegedly misled and relied on them. "For a *prima facie* case of fraud, the recipient of the misrepresentation must be the one to reasonably rely upon the misrepresentation and to be damaged as a proximate cause of that reliance." *Joyce v. Erie Ins. Exch.*, 74 A.3d 157, 167 (Pa. Super. Ct. 2013) (citations and internal quotation omitted); *see also Robinson v. Coyle*, No. 700 MDA 2014, 2015 WL 6159415, at *7 (Pa. Super. Ct. Apr. 28,

---

[6] Although "intent, knowledge and other conditions of a person's mind may be alleged generally," Holford "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Petruska v. Gannan Univ.*, 462 F.3d 294, 310 (3d Cir. 2006) (explaining that a state law fraudulent misrepresentation claim must be pled with particularity under Rule 9(b)). She "must allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation," and she must allege sufficiently particular facts to provide Defendants with notice of their alleged misconduct. *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 778 (3d Cir. 2018).

2015) (holding the plaintiff "[could ]not prove the necessary element of justifiable reliance" where she claimed "that *the court* reasonably relied upon the alleged misrepresentation, not her") (emphasis in original).

Even if the fraudulent misrepresentations could somehow be interpreted to have been directed at Holford, she has not alleged any defendant's action was the proximate cause of her claimed injuries. Although she maintains she did not co-sign the lease and Defendants had no right to rely on Keith Holford's fraudulent representation that she did (see, e.g., Compl., ECF 1, ¶¶ 63, 79), her claimed injuries stem from her father's fraud when he executed the lease using her name "without her knowledge, consent or authorization." (*Id.* ¶ 62.)

C

In Pennsylvania, defamation claims require a plaintiff to prove:

> (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; (7) abuse of a conditionally privileged occasion.

42 Pa. Cons. Stat. § 8343. In Holford's libel claim (Count 2) she alleges Defendants' conduct "resulted in the publication of statements, lawsuits, and judgments pertaining to [her] that are defamatory in nature" and that their alleged false statements "harm [her] good name and reputation." (Compl., ECF 1, ¶¶ 97-98.) In her slander claim (Count 3), she asserts their conduct "resulted in communications to each other and to the public in support of and about false claims, lawsuits and judgments about [her] that are defamatory in nature," causing her "actual harm . . . ." (*Id.* ¶¶ 101-02.)

Holford's defamation claims fail because she has not alleged any defendant made

11

a statement which is capable of a defamatory meaning. A statement is "defamatory if it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Goralski v. Pizzimenti*, 540 A.2d 595, 597-98 (Pa. Commw. Ct. 1988). It "may not be merely annoying or embarrassing to the plaintiff; and the court must consider the context of the statement and the nature of the audience hearing the words." *Milione v. Hahnemann Univ.*, No. 89-6761, 1992 WL 57670, at *4 (E.D. Pa. Mar. 18, 1992).

None of the allegations in the landlord/tenant actions or in the affidavits submitted in support thereof are defamatory. For example, statements that Holford "wanted to walk through the Property to see if she was interested in renting and occupying the Property" (Compl., ECF 1, ¶ 71(6)) or that she "acknowledged her liability for rental obligations under the Lease and occupied the Property as a tenant thereof" (*id.* ¶ 72(9)), cannot be interpreted as harming her reputation in such a way as to deter others from associating with her.

D

Holford's negligence claims (Counts 4 and 5) fare no better against any defendant. To state a negligence claim under Pennsylvania law, Holford must allege facts sufficient to show: (1) the relevant defendant owed her a duty; "(2) a breach of that duty; (3) a causal connection between the breach and resulting injury; and (4) actual loss or damages." *McLaughlin v. Bayer Corp.*, 172 F. Supp. 3d 804, 817 (E.D. Pa. 2016) (citing *City of Phila. v. Beretta U.S.A. Corp.*, 277 F.3d 415, 422 n.9 (3d Cir. 2002)). "[E]stablishing a breach of a legal duty is a condition precedent to a finding of negligence." *Estate of Swift v. Ne. Hosp. of Phila.*, 690 A.2d 719, 722–23 (Pa. Super. Ct.

1997) (citation omitted).

Kubisiak was not Holford's attorney and the Complaint alleges no facts to show Kubisiak was in privity with her or otherwise owed a duty to her. (*Id.* ¶¶ 123-132.) *See, e.g.*, *Smith v. Griffiths*, 476 A.2d 22, 26 (Pa. Super. Ct. 1984) ("The general rule is that an attorney will be held liable for negligence only to his client.").

Diaz, as the owner of the property – the lessor – had no duty to Holford – the putative lessee – to investigate her capacity to co-sign the lease. Even if he did, Holford alleges no facts which could show Diaz had any reason to know she never received and/or signed the lease documents. To the contrary, Holford claims her father put her name on the lease without her knowledge or approval and that as a result of her father's conduct, the lease documents bear both Holford's signature and her father's. (Compl., ECF 1, ¶ 34.)

Holford's negligence claim against Russo and Fox & Roach falls short for the same reasons. Any duty there was to ensure Holford was a valid co-signer was owed to Fox & Roach and Russo's client – the landlord – not to her. Nor has she alleged enough facts to show they had a reason to know she did not receive or sign the lease documents.

Any injury Holford suffered is not causally connected to the moving Defendants' alleged negligent actions or inactions. *See Lux v. Gerald E. Ort Trucking, Inc.*, 887 A.2d 1281, 1286 (2005) ("It is beyond question that the mere existence of negligence and the occurrence of injury are insufficient to impose liability upon anyone as there remains to be proved the link of causation.") (citations omitted). Pennsylvania courts ask whether "a defendant's acts or omissions were a substantial factor in bringing about the plaintiff's harm." *Bouriez v. Carnegie Mellon Univ.*, 585 F.3d 765, 771 (3d Cir. 2009)

(citation and internal quotation omitted). The substantial factor in bringing about the alleged harm to Holford's was her father's signing and initialing the lease documents on her behalf when she had no knowledge "she was supposed to 'co-sign' any lease at all." (*See* ECF 1, ¶¶ 33-34.)[7]

E

Holford's conclusory allegations that Defendants' conduct was "outrageous" and directed against her "in order to extort payment for a debt Defendants knew or should have known or were reckless in not knowing [she] did not owe" are not enough to state a claim for intentional infliction of emotional distress (Count 7). She has not alleged conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hoy v. Angelone*, 720 A.2d 745, 754 (Pa. 1998) (citation omitted).

Examples of outrageous behavior include: a driver fatally striking plaintiff's son and, without notifying the authorities, burying the body in a field, *Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970); defendants intentionally falsifying records to

---

[7] Fox & Roach and Russo also argue Holford's claims should be dismissed under Rule 12(b)(7) because Keith Holford is a necessary party under Rule 19 (Fox & Roach Mem. of Law, ECF 15 at 15) or, in the alternative, ask the Court to compel Holford to join his estate as a Defendant. (Fox & Roach Supplemental Mem., ECF 34 at 1.) They contend Holford is "necessary" under Rule 19(a)(1)(A) because the Court "cannot accord complete relief among existing parties" in his absence. (Fox & Roach Mem. of Law, ECF 15 at 15.) Diaz makes the same argument. (Diaz Br., ECF 32-1 at 17.) However, none explain why Keith Holford must be added to this case in order to afford complete relief. Holford concedes that "on her allegations, her father is "certainly a party to fraud" (Pl.'s Mem. in Resp. to Fox & Roach Mot., ECF 26 at 15-16), but a party's potential claims against an absent person "are not properly considered in determining necessary . . . parties to an action." *Travelers Indem. Co. v. Pauline*, No. 07-00538, 2007 WL 2318104, at *2 (M.D. Pa. Aug. 8, 2007). The Rule 19(a)(1) inquiry is limited "to whether the district court can grant complete relief to persons *already named* as parties to the action; what effect a decision may have on absent parties is immaterial." *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 313 (3d Cir. 2007) (emphasis added). The Court can determine whether any Defendant is liable to Holford without adding her father's estate as a party.

implicate plaintiff in a homicide for which plaintiff later went to jail, *Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236 (Pa. Super. Ct. 1986); and a doctor telling the media that plaintiff was suffering from a fatal disease when the doctor knew that information was false, *Chuy v. Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979). Nothing Holford could claim under these facts could rise anywhere near the level of a plausible claim for intentional infliction of emotional distress.

### F

For a concerted tortious conduct claim to exist, there must be viable underlying tort claims. *See Miller v. County of Centre*, 702 F. App'x 69, 75 (3d. Cir. 2017); *First United Bank & Trust v. PNC Fin. Servs. Grp., Inc.*, 667 F. Supp. 2d 443, 457 (M.D. Pa. 2009); *see also* Restatement (Second) of Torts § 876 (1979). Because Holford has not alleged any actionable tort claims against Kubisiak, Diaz, Russo or Fox & Roach, Holford's claim for "concert of action" (Count 6) is dismissed.

### G

Holford's punitive damages claim (Count 9) is dismissed for the same reason. "If no cause of action exists, then no independent action exists for a claim of punitive damage[s] since punitive damages is only an element of damages." *Kirkbride v. Lisbon Contractors, Inc.*, 555 A.2d 800, 802 (Pa. 1989); *see also Nix v. Temple Univ.*, 596 A.2d 1132, 1138 (Pa. Super. Ct. 1991) ("A request for punitive damages does not constitute a cause of action in an[d] of itself. Rather, a request for punitive damages is merely incidental to a cause of action.") (citing *Feingold v. SEPTA*, 517 A.2d 1270 (Pa. 1986)).

Even if Holford had alleged any viable underlying claim, her punitive damages claim would not withstand dismissal because punitive damages are only available for

15

"torts that are committed willfully, maliciously, or so carelessly as to indicate wanton disregard of the rights of the party injured." *G.J.D. by G.J.D. v. Johnson*, 713 A.2d 1127, 1129 (Pa. 1998). "The pleadings must therefore allege facts sufficient to demonstrate evil motive or reckless indifference to the rights of others." *Great W. Life Assur. Co. v. Levithan*, 834 F. Supp. 858, 865 (E.D. Pa. 1993) (citing *McDaniel v. Merck, Sharp & Dohme*, 533 A.2d 436, 447-48 (Pa. Super. Ct. 1987)). Holford has not alleged facts to show any defendant acted with the state of mind required to merit punitive damages. *See Hutchinson ex rel. Hutchinson v. Luddy,* 870 A.2d 766, 772 (Pa. 2005) ("[A] punitive damages claim must be supported by evidence sufficient to establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk.").

## IV

Finally, Holford never amended her Complaint or sought leave to do so. Whether or not a plaintiff seeks leave to amend, a district court considering a 12(b)(6) motion "must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). Amendment is futile "if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).

First of all, nothing Holford could say would alter the fundamental fact that her alleged troubles stem from her father's fraudulent conduct. Nor could Holford suddenly become the recipient of the alleged fraudulent misrepresentations, either her father's or

16

those allegedly made to the courts in Delaware County. The contents of the statements which are not capable of defamatory meaning are set in stone. No amendment could establish that any Defendant had a legal duty to Holford to verify the validity of her signature on the lease documents forged by her father. In short, any attempt to amend any of her claims would be futile.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.